# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| VICKI A. KLIMA, individually, as heir at law, and as administrator of the estate of Donna Faye Davis, deceased,<br><br>        Plaintiff,<br><br>v.<br><br>THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, d/b/a Hutchinson Good Samaritan Village,<br><br>        Defendant. | No. 10-1390-JAR |

## MEMORANDUM AND ORDER

Plaintiff Vicki A. Klima, individually, as an heir at law, and as administrator of the estate of Donna Faye Davis, brings this nursing home negligence and wrongful death action against defendant, The Evangelical Lutheran Good Samaritan Society, d/b/a Hutchinson Good Samaritan Village ("Good Samaritan"). This matter is before the Court on Good Samaritan's Motion to Dismiss or, in the Alternative, Compel Arbitration (Doc. 7). For the reasons stated below, the Court denies the motion and orders a trial to determine the existence of the alleged arbitration agreement.

## I.     Factual and Procedural Background

Plaintiff's Petition and the record evidence that the parties have submitted on the motion to dismiss or compel arbitration are summarized in pertinent part as follows:

Donna Davis was admitted to defendant's facility for long term care. Vicki Klima, who is Davis's daughter, signed an Admission Agreement (the "Agreement") under her power of

attorney for Davis.  Portions of the Agreement, which are attached to defendant's motion, includes a section at page twelve entitled "Resolution of Legal Disputes," which provides:

> **A. Resident's Rights.**  Any legal controversy, dispute, disagreement or claim arising between the parties after the execution of this Admission Agreement in which Resident, or a person acting on his or her behalf, alleges a violation of any right granted Resident under law shall be settled exclusively by binding arbitration as set forth in Section C. below.  This provision shall not limit in any way the Resident's right to file formal or informal grievances with the Facility or the State or Federal government.
>
> **B. All Other Disputes.**  Any legal controversy, dispute, disagreement or claim of any kind arising out of, or related to this Admission Agreement, or the breach thereof, or, related to the care of stay at the Facility, shall be settled exclusively by binding arbitration as set forth in Section C. below.  This arbitration clause is meant to apply to all controversies, disputes, disagreements or claims including, but not limited to, all breach of contract claims, all negligence and malpractice claims, all tort claims, and all allegations of fraud concerning entering into or canceling this Admission Agreement.  This arbitration provision binds all parties whose claims may arise out of or relate to treatment or service provided by the center including any spouse or heirs of the resident.
>
> **C. Conduct of Arbitration.**  The Resident understands that agreeing to arbitrate legal disputes means that he/she is waiving his/her right to sue in a court of law and to a trial by jury.  If the Resident does not wish to agree to arbitration, then he/she should inform the Facility by marking the box below and initialing and dating where indicated.  If, however, the Resident agrees to arbitrate disputes by signing this Admission Agreement, then the arbitration will be conducted as follows: Any arbitration conducted pursuant to this Resolution of Legal disputes shall be conducted within the county wherein this Facility is located and in accordance with the National Arbitration Forum ("NAF") Code of Procedure for Arbitration.  The award rendered by the arbitrator(s) shall be final, and judgment on the award shall be entered in accordance with applicable law in any court having jurisdiction thereof.  The parties understand that arbitration proceedings are not free and that any person requesting arbitration will be required to pay a filing fee to NAF and other expenses; however, the parties

agree to divide the filing fee and the costs of the arbitrator equally. The issue of whether a party's claims are subject to arbitration under this Agreement shall be decided by the arbitrator. If you would like information regarding NAF's arbitration service and its rules and procedures for arbitration, you may contact NAF at [contact information].[1]

At the bottom of this page is an option where the resident can elect to not arbitrate any disputes. This option was not checked or initialed by Davis or Klima.[2] The section attesting that the signatory acknowledged that she received a copy of the Resolution of Legal Disputes is initialed "VK."[3]

The last page of the Agreement is entitled "Signature Page," which states above the signature lines that:

> The Resident and those signing this Agreement, including the Responsible Party, certify that they have read and understand this Agreement.[4]

Klima signed the Signature Page, and her signature was witnessed by an employee of defendant, Michelle May.[5]

Through affidavit, plaintiff states that she did not sign or initial the "Resolution of Legal Disputes" portion of the Agreement.[6] Plaintiff also attaches affidavits from three friends and colleagues who are familiar with her signature and initials, who attest that the initials on the

---

[1] Doc. 8, Ex. A at 12.

[2] *Id.*

[3] *Id.*

[4] *Id.* at 13.

[5] *Id.*

[6] Doc. 12, Ex. 2.

"Resolution of Legal Disputes" section are not Klima's initials. Klima also signed an "Admissions Acknowledgments" form that acknowledged receipt of specific information and forms at the time of Davis's admission, and does not specifically mention the Resolution of Legal Disputes form.[7] Defendant counters with an affidavit from a Forensic Document Examiner who attests that after reviewing the Agreement, his opinion is that Klima wrote the initialed entry "VK" on page twelve of the Agreement.

Davis died on February 25, 2009. On October 15, 2010, plaintiffs filed suit in the Reno County, Kansas, District Court, and defendant timely removed the action to this Court. The parties asked this Court to defer ruling on the pending motion while they engaged in mediation; in the event the case did not settle, they also agreed that the arbitration issue should be separated and decided first by this Court, pursuant to Fed. R. Civ. P. 42(a).[8] On May 31, 2011, the parties notified the Court that mediation was unsuccessful.[9]

## II. Discussion

Under the Federal Arbitration Act ("FAA"),[10] "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable."[11] Section 3 of the FAA permits the Court to stay litigation in favor of arbitration as follows:

> If any suit or proceeding be brought in any of the courts of the

---

[7]*Id*. at 11.

[8]Doc. 19.

[9]Doc. 26.

[10]9 U.S.C. § 1 *et seq.*

[11]*Id*. at § 2.

4

> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which such
> suit is pending, upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial
> of the action until such arbitration has been had in accordance with
> the terms of the agreement, providing the applicant for the stay is
> not in default in proceeding with such arbitration.[12]

The FAA establishes a federal policy favoring arbitration agreements and requires that the court rigorously enforce such agreements.[13]

Normally, on a motion to compel arbitration under the FAA, the court applies a presumption in favor of arbitration.[14] Where the parties dispute whether a valid and enforceable arbitration agreement exists, however, this presumption of arbitrability disappears.[15] The court may compel arbitration only when satisfied that the making of the agreement is not at issue.[16] Generally, state law principles of contract formation govern whether a valid arbitration agreement exists.[17] Under Kansas law, the question whether the parties have created a binding contract depends on their intent and is a question of fact.[18]

In seeking to compel arbitration, defendants bear the initial burden to present evidence

---

[12]*Id.* at § 3.

[13]*Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

[14]*See ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (FAA evinces strong federal policy in favor of arbitration).

[15]*Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

[16]*Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004).

[17]*Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

[18]*Reimer v. Waldinger Corp.*, 959 P.2d 914, 916 (Kan. 1998).

sufficient to demonstrate an enforceable agreement to arbitrate.[19] Once defendants have met this burden, plaintiff must show a genuine issue of material fact as to the making of the agreement.[20] This creates a summary judgment-like standard that the court applies in deciding whether to compel arbitration.[21]

Regarding defendant's initial burden, the Court finds the record contains sufficient evidence of an enforceable arbitration agreement. In response, plaintiff states through affidavit that she did not initial the arbitration agreement, that the Resolution of Legal Disputes form is not referenced in the "Admissions Acknowledgment" portion listing the documents and other information provided at the time of Davis's admission, and the form does not state that by initialing the party agrees to arbitrate, but rather, only acknowledges receipt of the form.

As a general rule, a party signing a contract is required to read the agreement.[22] If an agreement is signed, the Court does not second guess the provisions where a party failed to read, understand, or ask the appropriate questions.[23] In this case, the Signature Page states that Klima has read and understands the Agreement. Although Klima does not dispute that the signature on this page of the Agreement is hers, the record only contains three pages of what appears to be a thirteen-page Agreement. Moreover, the Resolution of Legal Disputes section states that "the

---

[19]*SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003).

[20]*Id.*

[21]*See Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1223-24 (D. Kan. 2007) (explaining courts have uniformly applied summary-judgment-like standard to motions to compel arbitration under the FAA).

[22]*Albers v. Nelson*, 809 P.2d 1194, 1197 (Kan. 1991).

[23]*Id.*

6

Resident's agreement to arbitrate disputes is not a condition of admission or of continued stay."[24] Accordingly, on this record, defendants have not shown as a matter of law that the parties have a written agreement to arbitrate.

Section 4 of the FAA provides in part that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."[25] The Tenth Circuit has recognized that "[w]hen parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement."[26] Having found a genuine issue of material fact whether Klima initialed and/or agreed to the arbitration agreement, the Court finds that a trial on the existence of the agreement is appropriate. Because Section 4 permits the Court to decide the issue if plaintiff does not demand a jury trial,[27] no later than **June 29, 2011**, plaintiff shall inform the Court whether she requests a jury trial of this matter. The Court will then schedule a telephone conference to set a trial date.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Dismiss or Compel Arbitration (Doc. 7) is **denied.**

**IT IS FURTHER ORDERED** that this matter shall proceed to trial on the existence of the arbitration agreement; no later than **June 29, 2011**, plaintiff shall inform the Court whether

---

[24] Doc. 8, Ex. A at 12.

[25] 9 U.S.C. § 4.

[26] *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).

[27] 9 U.S.C. § 4 ("If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue."); *see also Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (as party alleged to be in default, only plaintiff may request a jury trial of this matter); *Kerr v. Dillard Store Servs., Inc.*, No. 07-2604-KHV, 2008 WL 2152046, at *5 (D. Kan. May 21, 2008) (same).

she requests a jury trial of this matter, after which time the trial date will be set.

**IT IS SO ORDERED.**

Dated: June 21, 2011

                                             S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            UNITED STATES DISTRICT JUDGE